UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

APR 2 3 2018

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| ALEXANDER WILLIAM JOHNSON, § <br> TDCJ No. 1726073, § <br> § <br> Petitioner, § <br> § <br> V. § <br> § <br> LORIE DAVIS, Director, Texas § <br> Department of Criminal Justice, § <br> Correctional Institutions Division, § <br> § <br> Respondent. § | SA-17-CV-00955-OLG |

## MEMORANDUM OPINION AND ORDER

Alexander Johnson, an inmate in the custody of the Texas Department of Criminal Justice-Correctional Institution's Division, has filed a counseled application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction on one count of murder. (ECF No. 1). As required by Rule 4 of the Rules Governing Section 2254 Cases, the Court conducted a preliminary review of the petition. Having considered the habeas petition (ECF No. 1), Respondent's Answer (ECF No. 7), Petitioner's Reply (ECF No. 10), the record (ECF No. 8), and applicable law, the Court finds the petition should be **DENIED**. Petitioner is also denied a certificate of appealability.

### Background

A grand jury indictment returned July 21, 2010, charged Petitioner with murder, alleging the use of a deadly weapon. (ECF No. 8-6 at 12). Petitioner testified at his trial in the 186th District Court of Bexar County, Texas. The Fourth Court of Appeals summarized his testimony as follows:

> During the guilt-innocence phase of trial, appellant testified on his own behalf. He said he and Randi Flores both worked for University Health System. Appellant said he and Randi were friends and that he had feelings for her. When he was told she was dating someone else, he was "bothered," but not upset. In the evening of May 13, 2010, appellant drove to an apartment complex to see Randi. While in the parking lot of the complex, he asked Randi if she was "with Andy [Vela][1] now," she replied "yes," and appellant said "okay" and then drove away.
>
> At some point in the evening, appellant drove to another apartment in search of some of his belongings. . . . A few hours later, he returned to the apartments where he had earlier spoken to Randi to meet with Randi's mother who said she had some of his belongings.
>
> While waiting in his car for Randi's mother, he saw a truck and two cars full of people and he thought to himself, "Something like this is not good. . . . Be careful." Appellant said Josue [the victim] walked up to appellant's car and asked "What the, 'blank,' are you doing? What the F are you doing back here?" Appellant said Josue had his hands in his pockets as he was walking, as if he were holding his pants up under his shirt. Appellant said he asked Josue if he had his "stuff," to which Josue replied "Yeah, I got something for you," and Josue pulled out a gun. Appellant said he then reached for his gun and started firing, and then he drove away. Appellant could not remember how many times he fired, and he said he was terrified. Appellant was arrested at approximately 3:00 a.m. the next morning. On cross-examination, appellant said he knew Josue and that Josue was a "good guy," but "if he wouldn't have did what he did, then I would never have done that." Appellant said he shot Josue because Josue pointed a gun at him and he felt justified in shooting Josue because he believed his own life was in danger.

*Johnson v. State*, No. 04-11-00461-CR, 2013 WL 345006, at *2 (Tex. App.—San Antonio 2013, pet. ref'd).

Several witnesses testified that Randi was visiting with friends in the parking lot of the apartment complex when Petitioner drove into the parking lot around 10:30 p.m. These individuals knew the victim, Randi, and Petitioner, and testified under subpoena as State's witnesses.[2] (ECF No. 8-11 at 44, 71, 109). These witnesses testified they observed Josue walk towards them in the parking lot as Petitioner drove into the parking lot. They all testified that, as

---

[1] Andy Vela was the victim's roommate. (ECF No. 8-11 at 176-77).
[2] Although Randi was sworn as a witness when the Rule was invoked, (ECF No. 8-11 at 4), she did not testify at Petitioner's trial.

2

Petitioner stopped his vehicle near them, Josue walked toward the driver's side of the vehicle and asked Petitioner "What are you doing?" or "Do you need something?" or "Can I help you?" (ECF No. 8-11 at 55, 79, 120). They testified that immediately afterward they heard at least four gunshots, and witnessed Petitioner speed away in his vehicle. The State subpoenaed the testimony of Andy Vela and Valerie Ingorvaia, who testified they were with the victim in Ms. Ingorvaia's apartment just prior to the shooting. (ECF No. 8-11 at 132, 143-44, 183-84). Although they did not witness the shooting, Mr. Vela and Ms. Ingorvaia heard the shots and rushed to where Josue was lying in the parking lot. (ECF No. 8-11 at 144, 184). These two witnesses testified Josue named Petitioner as the person who shot him, and then died. (ECF No. 8-11 at 147-48, 187). On cross-examination defense counsel highlighted inconsistencies in the State's witnesses' statements, and elicited testimony from the medical examiner that at least one of the gunshots would have immediately rendered Josue unconscious and unable to speak. (ECF No. 8-12 at 72-73).

The jury was instructed on murder and self-defense. (ECF No. 8-6 at 144-55). The jury found Petitioner guilty of murder, and the trial court imposed a sentence of life imprisonment. (ECF No. 8-6 at 156, 169). Petitioner was appointed appellate counsel, who did not file a motion for a new trial. (ECF No. 7 at 3). *See also Johnson*, 2013 WL 345006 at *5 n.1.

Petitioner appealed, asserting he was entitled to a new sentencing hearing because the trial court was not an impartial adjudicator. (ECF No. 8-1). The Fourth Court of Appeals affirmed the trial court's judgment. *Johnson*, 2013 WL 345006, at *5.

Petitioner, through counsel, sought a state writ of habeas corpus, asserting he was denied his right to a public trial because the public was excluded from the courtroom during voir dire and because he was denied his right to the effective assistance of trial and appellate counsel.

(ECF No. 8-19 at 10, 12-14). Petitioner asserted trial counsel was ineffective for failing to object to the "exclusion of the public during jury selection and by failing to interview and call as a witness at trial Jasmine Salinas who could have contradicted Andy Vela's testimony that Josue did not arm himself prior to confronting Alex." (ECF No. 8-19 at 39). He alleged appellate counsel's performance was deficient because counsel failed to file a motion for a new trial regarding the improper exclusion of the public during jury selection. (ECF No. 8-19 at 40). The state habeas trial court made findings of fact and conclusions of law, and recommended the writ be denied. (ECF No. 8-19 at 184-90). The Court of Criminal Appeals denied the writ on the findings of the trial court. (ECF No. 8-17).

In this federal habeas action Petitioner asserts he was denied his right to a public trial. (ECF No. 1 at 7; ECF No. 6 at 12-26). He further alleges he was denied the effective assistance of trial and appellate counsel. (ECF No. 6 at 26-39). He also contends "[t]he state habeas court's finding that the courtroom was not closed to the public during jury selection is an unreasonable determination of the facts," and that "[t]he state habeas court's finding that the defense adequately investigated this case and that several witnesses, who stated they were available to testify at trial and were not interviewed by the defense, were not available at the time of trial is an unreasonable determination of the facts." (ECF No. 6 at 42). Respondent allows the petition is timely and not successive, and that Petitioner exhausted his federal habeas claims in the state courts. (ECF No. 7 at 5).

# Analysis

## I. Standard of Review

### A. Review of State Court Adjudications

Petitioner's habeas petition is governed by the heightened standard of review provided by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court's findings of fact are presumed to be correct unless the petitioner can rebut the findings of fact through clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Valdez v. Cockrell*, 274 F.3d 941, 949 (5th Cir. 2001). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable," and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). As long as "fairminded jurists could disagree" on the correctness of the state court's decision, the state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## B. Review of Sixth Amendment Claims

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a petitioner must demonstrate counsel's performance was deficient and this deficiency prejudiced his defense. *Id.* at 687-88, 690. The Supreme Court has held that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland*, 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 690). Accordingly, there is a strong presumption that an alleged deficiency "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

A *Strickland* claim fails if the petitioner cannot establish *either* deficient performance or prejudice and, accordingly, the Court need not evaluate both prongs of the test if the petitioner makes an insufficient showing as to either performance or prejudice. *Id.* at 697; *Blanton v. Quarterman*, 543 F.3d 230, 235-36 (5th Cir. 2008). A habeas petitioner has the burden of

proving both prongs of the *Strickland* test. *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009); *Blanton*, 543 F.3d at 235.

## II. Merits

### A. Public Trial

Petitioner contends the trial court, Judge Herr, denied him a public trial. (ECF No. 6 at 12). He alleges members of the public were present prior to voir dire, but were "forced by the bailiffs to leave the courtroom before the venire panel entered the courtroom." (ECF No. 12 at 12, 25). Petitioner raised this claim in his state habeas action, and the Court of Criminal Appeals denied the claim on the findings of the habeas trial court, Judge Moore.

In an affidavit in the state habeas action, a Ms. Johnson stated she was present in the courtroom on the first day of trial, and that the bailiff required her and "all of the members of the public (approximately five other people) to leave the [courtroom] before the venire panel entered the [courtroom]." (ECF No. 8-19 at 124). Judge Herr, her court reporter, and Petitioner's trial counsel all filed affidavits in the state habeas action. Petitioner's trial counsel averred:

> The usual practice in the 186th District Court at that time was for the bailiff to ask members of the public to leave the courtroom during jury selection because of limited space. I knew in advance that this was going to happen so I had already informed Alex Johnson and his family. No one objected or said they wanted to [be] in the courtroom during jury selection. If any member of Alex Johnson's family or friends had wanted to remain in the courtroom during jury selection I would have informed the Judge. I do not recall how many other people, if any, were in the courtroom of the 186th.

(ECF No. 8-19 at 194).

Judge Herr's affidavit states:

> Although I do not have a specific recollection as to this particular trial, I can state with certainty that at no time did I close the courtroom to the public.
> I further attest that the normal practice and routine in the 186th when a jury panel entered the courtroom was that the bailiffs cleared the courtroom to allow the venire panel to enter and be seated.

7

> The 186th District Court courtroom was always open to the public during the jury selection proceedings. I do not recall a time that it was brought to my attention that there were spectators who wanted to be allowed in the courtroom and were denied access.

(ECF No. 8-19 at 196). These factual statements were supported by the affidavit of the court reporter. (ECF No. 8-19 at 198).

The state habeas court found the affidavit of trial counsel truthful, and found the affidavits of Judge Herr and the court reporter credible. (ECF No. 8-19 at 186-87). The state habeas trial court found there was "no evidence on the record of the voir dire proceedings to suggest the courtroom was closed to the public." (ECF No. 8-19 at 186). The habeas court further found

> ... that Judge Herr never closed 186th District Court to the public.
> ... The Court finds that the statements of Hilda Johnson in the affidavit attached to the application credible. The Court finds that she was asked to leave the courtroom so that the jury panel could be seated. The Court does not find her conclusion that, "neither I nor any members of the public were allowed to enter the courtroom during voir dire ..." credible based on the affidavits from the other witnesses.
> 10. The Court finds that the courtroom was cleared briefly to allow the panel to be seated and does not find that the courtroom was closed to the public at any time.

(ECF No. 8-19 at 187). The Court of Criminal Appeals adopted these findings and denied relief.

The state court's denial of this claim was based on the factual conclusion that the courtroom was not closed to the public. This conclusion was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The record before the state habeas court, i.e., the affidavits of Petitioner's counsel, the trial court, and the court reporter, all indicate that Ms. Johnson and the other members of the "public" were only asked to leave the courtroom to provide seating for the venire panel.

Section 2254(e)(1) requires that a state court's factual determinations "shall be presumed to be correct." The AEDPA requires this Court to presume the correctness of the state court's factual findings unless Petitioner rebuts this presumption with "clear and convincing evidence." *Lewis v. Thaler*, 701 F.3d 783, 788 (5th Cir. 2012). Petitioner presents no clear and convincing evidence to rebut the state habeas court's finding of fact that the courtroom was not closed to the public. Reasonable jurists could not disagree that the state court's factual finding that the courtroom was not closed to the public was erroneous and, accordingly, Petitioner is not entitled to relief on this claim. *Wood v. Allen*, 558 U.S. 290, 301 (2010); *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).

### B. Ineffective Assistance of Trial Counsel

Petitioner asserts trial counsel was ineffective for failing to interview Jasmine Salinas and call her as a witness at trial. Petitioner argues Ms. Salinas would have contradicted Andy Vela's testimony that the victim was not armed when confronting Petitioner. (ECF No. 8-19 at 39).[3]

The state habeas court considered and rejected this claim of ineffective assistance of trial counsel. Ms. Salinas' affidavit was attached to Petitioner's state habeas pleadings. In her affidavit she states:

> Some time after the shooting of Josue . . . Andy Vela told me he was a witness in this case . . . Andy told me that on the night of the shooting, Josue had gone outside his apartment (Josue shared an apartment with Andy) to confront Alexander (the Defendant in this cause) and that Josue had armed himself with a gun prior to confronting Alexander. Andy ran out of the apartment when he heard the shots and found Josue dead. Andy denied taking Josue's gun.

---

[3] In his petition, Petitioner asserts his counsel "failed [to] interview 2 witnesses who could have testified that they saw complainant, a gang member," arm himself before he "confronted" Petitioner. (ECF No. 1 at 5). However, in his memorandum in support of his petition, Petitioner cites only counsel's failure to interview and call Ms. Salinas.

9

(ECF No. 8-19 at 122). Ms. Salinas does not state in her affidavit that she was available to testify at trial. *Id.* However, also attached to the state habeas application is the affidavit of a private investigator, stating "[d]uring my interview with [Ms.] Salinas she claimed she did not testify at Alexander's Johnson's original trial but that she would have been willing and able to appear and testify if she had been called." (ECF No. 8-19 at 126).

Petitioner's trial counsel filed an affidavit in the state habeas action. Counsel averred:

> The police and the defense investigator tried to interview all witnesses that could be found at that time. The victim, Applicant and many of the witnesses knew each other. It was no secret amongst their group that Applicant was accused of Murder. We were not able to find anyone that said the victim had a gun or find anyone that said they had been told that the victim had a gun. No gun was ever found.
> However, I do agree with Applicant that testimony from a witness stating the victim had a gun and was threatening him would have made a difference in the result of his trial. Unfortunately, we were not able to find anyone willing to say this.

(ECF No. 8-19 at 194).

The state habeas trial court made the following findings and conclusions:

> 12. The Court finds that trial counsel and his investigator adequately investigated witnesses and attempted to locate individuals that could assist Applicant in his defense.
> 13. Applicant provides affidavits in support of the allegation that several witnesses were available to testify. The Court is not persuaded that the witnesses were available at the time of trial. Although, many of the individuals knew each other, counsel was unable to locate any witnesses who could testify that the victim had a gun. The Court finds that it is more likely that the witnesses did not wish to be located at the time of trial.

(ECF No. 8-19 at 187).

*Strickland* requires counsel to either undertake a reasonable investigation or make an informed strategic decision that investigation is unnecessary. 466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013). The state habeas court's factual finding, that

counsel's investigation was adequate, has not been rebutted with clear and convincing evidence. Furthermore, although Ms. Salinas' testimony could have been used to impeach Mr. Vela's credibility, she does not state that she personally observed the victim in possession of a gun and, accordingly, her statement would have been inadmissible hearsay with regard to truth of the matter asserted, i.e., that the victim was armed. Additionally, the statements she alleges Mr. Vela made do not comport with all of the testimony presented at trial; all of the witnesses testified Mr. Vela and the victim were at Ms. Ingovaia's apartment, and not their own, immediately prior to the shooting. Mr. Vela and Ms. Ingovaia also testified the victim did not leave the apartment to confront Petitioner, but instead left the apartment to ask Randi to return to the apartment.

Additionally, even without Ms. Salinas' testimony defense counsel was able to attack Mr. Vela's credibility with regard to whether the victim was armed when he left the apartment just prior to being shot, (ECF No. 8-11 at 191-92),[4] and no weapon was found on or near the victim after the shooting. Furthermore, all of the testimony indicated the victim did not know Petitioner would be driving into the parking lot when he left the apartment to ascertain Randi's whereabouts and, accordingly, there was no reason for the victim to arm himself in anticipation

---

[4] Upon cross-examination, Mr. Vela testified the victim knew Mr. Vela had seen a gun in Petitioner's car earlier in the day. (ECF No. 8-11 at 189-90). Defense counsel then questioned Mr. Vela as follows:

> Q And you're worried and you are sending out Josue, your roommate, empty handed without a weapon. Is that what you are telling this jury?
> A Well, I mean, I can't — I mean, if I don't possess a weapon for myself, why am I going to give him an illegal firearm? Why should I give him anything?
> Q So you didn't go yourself. You sent him?
> A No. I was on my way to go, and he asked me.
> Q You sent him out and you stayed behind; is that correct?
> A Yes, sir.
> Q Right?
> A Yeah.
> Q You sent him out empty handed, no handguns?
> A No handguns. How am I supposed to know this is going to happen? I can't predict anything. I mean, I can't tell you.

(ECF No. 8-11 at 191-92).

of a confrontation. Therefore, Petitioner is unable to establish that counsel's alleged failure to present Ms. Salinas' testimony was prejudicial.

The state court's factual finding, that Ms. Salinas was not available to testify, was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Additionally, because Petitioner is unable to establish prejudice arising from counsel's "failure" to present Ms. Salinas' proffered testimony, the state court's denial of this claim was not an unreasonable application of *Strickland*. Accordingly, Petitioner is not entitled to federal habeas relief on this claim of ineffective assistance of counsel.

### C. Ineffective Assistance of Appellate Counsel

Petitioner alleges appellate counsel's performance was deficient because counsel failed to file a motion for a new trial regarding the improper exclusion of the public during jury selection. (ECF No. 8-19 at 40). Petitioner raised this claim in his state habeas action. Mr. Callahan represented Petitioner during the time allowed to file a motion for a new trial, and he filed two affidavits in the state habeas action. Mr. Callahan's first affidavit states:

> 1. I was appointed to the appeal in the above Applicant's case on July 5, 2011.
> 2. I never represented the Applicant in the trial court.
> 3. I reviewed the record on appeal on September 1, 2011.
> 4. On October 4, 2011, I filed a Motion to Withdraw as Attorney of Record because Alex Sharff, Esq. had been retained by the Applicant's father.

(ECF No. 8-19 at 175). His second affidavit in the state habeas action states: "My notes do not reveal from the record on appeal that the issue of people excluded from the courtroom was ever mentioned. . . . Nor do my notes reflect that this even occurred." (ECF No. 8-19 at 183).[5]

---

[5] Petitioner's appeal was filed by Mr. Sharff, whose affidavit states:
  It should be noted that Petitioner was convicted on July 1, 2011, when Petitioner was represented by trial counsel[,] Mario Trevino. The trial court then appointed Vincent D. Callahan to represent Petitioner on direct appeal on July 5, 2011. The undersigned counsel was not hired until after September 27, 2011, a date clearly outside the time limit

12

> The state habeas court found:
>
>> Applicant has not established by a preponderance of the evidence that the courtroom was closed to the public.
>>
>> ***
>>
>> 16. The Court finds the affidavit of Vincent D. Callahan, Applicant's appellate attorney on direct appeal, credible. . . .
>> 17. The Court finds that appellate counsel was unaware of any issues pertaining to the closure of the courtroom; it was not on the record.
>> 18. The Court finds the record of the proceedings did not reveal any evidence of members of the public being asked to leave the courtroom. Appellate counsel could not have had knowledge of the alleged closure from the record.
>>
>> ***
>>
>> The Court concludes that Applicant fails to prove by a preponderance of the evidence that his appellate counsel was ineffective for failing to raise the claim that the courtroom was closed in a Motion for New Trial or on appeal. Counsel was unaware of the issue, if any.
>>
>> Further, had he raised the issue on appeal, the Court finds that the courtroom was not closed and therefore there [sic] Applicant fails to establish that the result of the appeal would have been different. *Robbins*, 528 U.S. at 285-86, 120 S. Ct. 746 (citing *Strickland*, 466 U.S. at 687-91, 694, 104 S. Ct. 2052).
>
> (ECF No. 8-19 at 187-89).

To succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show that his counsel's performance was "deficient," i.e., objectively unreasonable. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). If the petitioner is able to establish that appellate counsel's performance was deficient, he then must demonstrate prejudice arising from the deficient performance. To establish prejudice, the petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to assert a particular claim on appeal, he would have prevailed in the appeal. *Smith*, 528 U.S. at 286; *Moreno v. Dretke*, 450 F.3d 158, 168 (5th Cir. 2006).

---

for filing a Motion for New Trial. There was no legal means by which the undersigned could have raised the issue alleged in Petitioner's writ of habeas corpus because counsel was not employed in a timely manner.

(ECF No. 8-19 at 174).

Because the issue of the closed courtroom was not meritorious, Mr. Callahan's alleged failure to raise this issue in a motion for a new trial was not prejudicial, and the state court's denial of this claim was not an unreasonable application of *Strickland*.

## Conclusion

Petitioner has not rebutted the state habeas court's finding of fact that his trial was not closed to the public during voir dire by clear and convincing evidence. Nor has Petitioner established that the state court's denial of his ineffective assistance of trial and appellate counsel claims was an unreasonable application of *Strickland*. Accordingly, Petitioner fails to establish an entitlement to federal habeas relief.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without

reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal of the Petitioner's habeas petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

**IT IS THEREFORE ORDERED** that the Application for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**SIGNED** on this 23 day of April, 2018.

_____
**ORLANDO L. GARCIA
CHIEF UNITED STATES DISTRICT JUDGE**